IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TERRIE M. WILLIAMS                    *
                                      *
          v.                          *    Civil Action WMN-12-72
                                      *
1199 SEIU UNITED HEALTHCARE           *
WORKERS EAST et al.                   *
                                      *

*      *      *      *      *      *      *      *      *      *      *      *      *

MEMORANDUM

    Pending before this Court is Defendants' Motion to Dismiss,
ECF No. 9.  The parties have fully briefed the motion, and it is
ripe for review.  Upon consideration of the pleadings, facts and
applicable law, the Court determines that no hearing is
necessary, Local Rule 105.6, and Defendants' Motion to Dismiss
will be granted in part and denied in part for the reasons set
forth below.

I. BACKGROUND

    Plaintiff Terrie Williams began working as an
Administrative Organizer for Defendant 1199 SEIU United
Healthcare Workers East (1199) on June 16, 2008.  Defendant 1199
is a labor union that represents healthcare workers in several
East Coast areas, including the Maryland/DC region.  Plaintiff
has also named as Defendants George Gresham, President of 1199;
John Reid, Executive Vice President of 1199 and Plaintiff's
second-line supervisor; Katherine Taylor, who was initially the
Vice President and Plaintiff's immediate supervisor, and later

was named as Interim Executive Vice President; and Lisa Wallace, who became Vice President and Plaintiff's immediate supervisor after Ms. Taylor was named to the interim position.

On January 6, 2012, Plaintiff filed a pro se Form Complaint alleging employment discrimination.  She alleges that the Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq. (ADEA). Specifically, she alleges that from February 2009 until the termination of her employment on October 17, 2011, she was subjected to disparate treatment and a hostile work environment based on her sex, discriminated against based on her age, and that she was retaliated against for filing a charge with the Equal Employment Opportunity Commission (EEOC).

Based on the information provided in the Form Complaint, its attachments, Plaintiff's supplement to the complaint, and the charges[1] Plaintiff filed with the EEOC, the Court understands

---

[1] In evaluating a motion to dismiss, the Court may consider documents attached to the complaint and to the motion to dismiss as long as such documents are integral to the complaint and authentic.  Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).  In the employment discrimination context, a court may consider an EEOC charge and other EEOC documentation because such documents are integral to the complaint as plaintiff necessarily relies on these documents to satisfy the time limit requirements of the statutory scheme.  Holowecki v. Fed. Express Corp., 440 F.3d 558, 565-66 (2nd Cir. 2006); McDougall v. Maryland Transit Admin., Civ. No. WDQ-11-3410, 2012 WL 1554924 at n.3 (D. Md. Apr. 27, 2012) ("a plaintiff's

that Plaintiff's allegations arise from a general discontentment
in the way she was treated during her employment at 1199.
Plaintiff has submitted over a hundred pages of documentation to
support her claim.  From these submissions the Court has created
a chronology of those events which are most significant to its
analysis of the pending motion:

On May 25, 2010, Plaintiff was given a "Written Warning,"
because she did not go to her "shop" on the weekend and did not
seek approval from her supervisors for a change in her schedule.
ECF No. 4-1 at 61.  The warning also notes that Plaintiff was
unavailable on her cell phone during the weekends, even though
her position requires her to be reachable by phone at all times.
Id.

On August 24, 2010, Plaintiff drafted a letter[2] outlining
her concerns entitled "Discrimination (gender), hostile work
environment, bullying, intimidation."  ECF No. 4-1 at 82-85.
She complained that she has been harassed, bullied, ridiculed,
verbally abused, and discriminated against by her supervisor,
Katherine Taylor.  Specifically, she stated that she had been

---

administrative discrimination charge is integral to a subsequent
discrimination complaint").  The Court's consideration of these
documents does not convert this into a motion for summary
judgment.  Holowecki, 440 F.3d at 566.

[2] The letter does not include a salutation or addressee, but
presumably it was sent to someone in the New York headquarters
of 1199.

excluded from conference calls and meetings that she should have attended, was written up unjustly on several occasions, received a leased car that was infested by mice, and was not permitted to use personal or vacation days.

Plaintiff filed her first EEOC charge on September 13, 2010. The charge alleged that she had been discriminated against based on her sex from June 16, 2008, the date of her hiring,[3] to June 19, 2010. Specifically, she alleged that:

> Since the beginning of my employment I have been subjected to unequal terms and conditions of employment, discipline, harassment, and intimidation by Katherine Taylor, Vice President. Ms. Taylor subjects the females in the office to similar treatment with the exception of Lisa Wallace who fills in for Ms. Taylor in her absence. Ms. Taylor does not subject the male employees to the disparate treatment. Ms. Taylor sabotages my work, hollers, yells, and has disciplined me for things that I am not guilty of. The work environment is so hostile that it has caused medical problems for me. I was hospitalized on June 19, 2010, and have been on medical leave since that time.

ECF No. 4-1 at 1. Plaintiff further alleges that she was not given any reasons for the treatment alleged above and that when Ms. Taylor provides a reason, "she is very condescending about it." Id. Plaintiff received a Dismissal and Notice of Rights from the EEOC dated September 27, 2011.[4]  See ECF No. 4-1 at 1.

---

[3] The Form Complaint alleges that the discrimination for which Plaintiff is suing began in February 2009.

[4] Plaintiff notes that she picked up the letter from the EEOC office on October 19, 2011, because it was mailed to the wrong address.

On July 19, 2011, Plaintiff filed a second charge of
discrimination, again alleging discrimination based on race and
adding a claim for retaliation.  ECF No. 9-3 at 3.  She alleged
that since filing an EEOC charge on August 26, 2010,[5] she had
continued to be disparately treated by Lisa Wallace, who denied
her time off, cancelled her vacation time, gave her additional
assignments without her knowledge, and wrote her up because she
took time off that was not approved.  Plaintiff elaborates this
last point, noting that the staff was told that no one was
allowed to take vacation time during the month of May, but a
male employee and another female employee were allowed to take
vacation.  She also charged that she was next in line to go to a
training conference in Los Angeles, but a male co-worker was
selected to go instead.  Finally she alleges that she was given
more work assignments than other staff members.

On August 10, 2011, Plaintiff received a one-day suspension
because she was a "no call, no show."  ECF No. 1-4 at 28.  She
failed to attend a Saturday morning phone bank and had not
previously notified her supervisor.  Plaintiff disputed the
suspension and explained that she did not know she was supposed
to be at the phone bank.  ECF No. 1-4 at 29.  This suspension

---

[5] The Court has not been provided with a copy of an EEOC Charge
dated August 26, 2010, nor did 1199 receive notice of such a
charge.  See Mot. at n.3.  The Court assumes that Plaintiff is
referring to the charge she filed on September 13, 2010.

was upheld after a grievance hearing was held on December 13, 2011.  ECF No. 4-1 at 53.

On August 12, 2011, Plaintiff made a request to Lisa Wallace that she be permitted to take a personal day because her ceiling was leaking.  ECF No. 4-1 at 46-47.  Ms. Wallace denied the request, stating that a personal day must be requested seven days in advance.  Plaintiff then asked to instead use a vacation day.  This request was also denied, as it too needed to be made in advance.

Then, on August 22, 2011, Plaintiff received a three day suspension for a second "no call, no show" incident.  ECF No. 1-4 at 23.  Lisa Wallace explained that Plaintiff had not shown up for work as scheduled and did not contact Ms. Wallace until 3:48 p.m., when Plaintiff advised that she was out sick.  This suspension, however, was rescinded after Plaintiff's grievance was upheld on December 13, 2011.  ECF No. 4-1 at 54.  Testimony at the hearing indicated that Ms. Wallace had a missed call from Plaintiff in the morning and had received a text message indicating that Plaintiff was taking a sick day.  Ms. Wallace responded to Plaintiff's text message by stating text message was not the appropriate means to give notice when taking a sick day, and did not return Plaintiff's call.  Id.; see also ECF No. 1-4 at 26.

On October 1, 2011, Plaintiff sent an email to George Gresham, outlining the wrongs that she had experienced during her employment and requesting a meeting.  ECF No. 1-4 at 30. She states that she was unfairly denied tuition reimbursement because Mr. Reid and Ms. Wallace both refused to sign a form approving such reimbursement.  She also notes that Ms. Wallace suspended her without pay for four days and that Mr. Reid refused to talk to Plaintiff about the suspensions.  Plaintiff also states that she was refused time off when she requested leave to be with her 19-year-old daughter who had emergency brain surgery. Finally, she notes that she has continuously been "targeted, discriminated against, harassed and retaliated against," has suffered mental and physical defects because of the stress this treatment has caused her, and that she will go public with her allegations if Mr. Gresham does not take her seriously and address her concerns.

On October 17, 2011, Plaintiff's employment was terminated after she was a "no call, no show" at a mandatory "MLK Keep the Dream Alive Rally," which took place on Saturday, October 15. ECF No. 4-1 at 9.  Plaintiff had advised Lisa Wallace the preceding Friday that she would not be attending the rally because she did not believe she had received any justice at her job.  Plaintiff signed the termination memo but noted that she would be filing a grievance because she had advised both Lisa

Wallace and John Reid that she would not be attending "due to the moral and ethical obligation to my beliefs that the injustices that have been done to me would compromise what this Rally MLK stands for. . ." Id.

The next day, on October 18, 2011, John Reid drafted a letter confirming that Plaintiff was terminated from her position for insubordination when Plaintiff failed to attend a mandatory work event from which she had not been excused.  ECF No. 4-1 at 43.  Plaintiff grieved the termination of her employment.  After a hearing on December 13, 2011, her grievance was denied.  ECF No. 4-1 at 55.

Plaintiff filed an amended charge with the EEOC on November 7, 2011, adding a charge of age discrimination to her July 2011 charges of sex discrimination and retaliation.  ECF No. 9-4 at 3.  To support this additional charge, Plaintiff stated that she found out two older employees were given light duty after Plaintiff had requested light duty and been told it did not exist.  Plaintiff also noted that her employment had been terminated.  EEOC sent a Dismissal and Notice of Rights letter concerning this amended charge to Plaintiff on March 29, 2012. ECF No. 14-1 at 1.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim

to relief that is plausible on its face.'"  Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570, (2007)).  "A claim has facial

plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  Iqbal, 556

U.S. at 678 (citing Twombly, 550 U.S. at 556).  A court need not

accept a plaintiff's legal conclusions as true, as

"[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice."  Id.

Complaints filed by pro se plaintiffs are "to be liberally

construed and a pro se complaint, however inartfully pleaded,

must be held to less stringent standards than formal pleadings

drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89, 94 (2007)

(citations omitted). Nonetheless, a pro se complaint must at

least meet a minimal threshold of plausibility.

## III. DISCUSSION

### A. Claims against Individual Supervisors

Plaintiff has named as Defendants in her suit Mr. Gresham, Mr.

Reid, Ms. Taylor and Ms. Wallace, individuals who served as

Plaintiff's supervisor or were members of the upper management

at 1199.  Both Title VII and the ADEA provide that it is

unlawful for an "employer" to engage in certain discriminatory

practices or conduct.  See 42 U.S.C. § 2000e-2 (Title VII); 29

U.S.C. § 623 (ADEA).  The statutes similarly define an "employer" as "a person engaged in an industry affecting commerce" who employs more than a certain number of employees "and any agent of such a person."  See 42 U.S.C. § 2000e(b) (fifteen or more employees); 29 U.S.C. § 630 (twenty or more employees).  The Fourth Circuit has interpreted both of these statutes and held that the term "employer" does not include individual defendants.  See, e.g., Lissau v. Southern Food Serv., Inc., 159 F.3d 177, 181 (4th Cir. 1998) (interpreting Title VII); Birbeck v. Marvel Lighting Corp., 30 F.3d 507, 511 (4th Cir. 1994) (interpreting ADEA).  Consequently, Plaintiff's claims plead against the aforementioned individually named Defendants fail as a matter of law.  Therefore, the Complaint against Mr. Gresham, Mr. Reid, Ms. Taylor and Ms. Wallace will be dismissed with prejudice.

**B. ADEA Claims**

In her Form Complaint Plaintiff checked off the box to bring an action under the ADEA, and briefly alleges that vacation and personal days were denied when she requested them but given to older workers at their request.  In her November 2011 EEOC Charge, Plaintiff also alleged that two older employees were given "light duty," which Plaintiff had been previously told did not exist.  Plaintiff has not alleged any

facts to suggest that she was treated less favorably than younger employees.

The Supreme Court has clearly stated that the purpose of the ADEA is to "protect a relatively old worker from discrimination that works to the advantage of the relatively young." General Dynamics Land Systems, Inc. v. Cline, 540 U.S. 581, 591 (2004). Plaintiff appears to concede that this is the current state of the law, but urges this Court to set a new precedent and apply the ADEA to the reverse-age discrimination that she has alleged. Opp'n at 3. The Court, however, is bound by the prudential doctrine of stare decisis, which directs a court to adhere to the legal decisions of other courts made in similar cases. Payne v. Tennessee, 501 U.S. 808, 827 (1991). A court may depart from precedent, however, "when governing decisions are unworkable or are badly reasoned." Smith v. Allwright, 321 U.S. 49, 665 (1944).

In Cline, the Supreme Court considered the precise issue of whether discrimination against the relatively young in favor of those older is protected by the ADEA and held that it was not protected. Cline, 540 U.S. at 593-594. In reaching this decision, the Supreme Court thoroughly analyzed the legislative history of the ADEA and also considered the "virtually unanimous accord [among the Courts of Appeals and District Courts] in understanding the ADEA to forbid only discrimination preferring

11

young to old." Id.  Plaintiff has not provided any reasons why

the governing decision is unworkable or badly reasoned, and the

Court cannot conjure any itself.  Therefore, the Court is bound

by Cline and, as such, will dismiss Plaintiff's ADEA claim.

## C. Title VII Claims[6]

### a. Disparate Treatment

To establish a prima facie case for discriminatory

disparate treatment under Title VII, Plaintiff must allege

sufficient facts to plausibly show that (1) she is a member of a

protected class; (2) her job performance was satisfactory; (3)

adverse employment action was taken against her; and (4)

similarly situated employees outside the protected class were

---

[6] In addition to arguing that Plaintiff's Title VII Claims lack
sufficient factual support, Defendants also argue that any of
Plaintiff's claims related to alleged conduct that occurred
prior to November 17, 2009, are time-barred because they
occurred more than 300 days prior to the filing of Plaintiff's
first EEOC Charge on September 13, 2010.  See ECF No. 9-1 at 11
(citing 42 U.S.C. § 2000e-5(e)(1) and VanSlyke v. Northrop
Grumman Corp., 115 F. Supp. 2d 587, 592 (D. Md. 2000)).  The
Court agrees, and will dismiss Plaintiff's claims in so far as
they rely on conduct that occurred prior to November 17, 2009.

Defendants also argue that the sex discrimination claims
raised in Plaintiff's July 2011 charge and November 2011 amended
charge must be dismissed because, at the time she filed her
suit, Plaintiff had not received a right to sue letter and thus
failed to exhaust her administrative remedies.  The Court
notes, however, that Plaintiff received a right to sue letter
related to these charges on March 29, 2012.  In light of
Plaintiff's pro se status and because these claims will be
dismissed under 12(b)(6), the Court will not require Plaintiff
to go through the formality of amending her complaint, and deems
the jurisdictional requirement of administrative exhaustion
satisfied for all claims.

treated differently.  See Coleman v. Md. Ct. of Appeals, 626
F.3d 187, 190 (4th Cir. 2010).

It is undisputed that Plaintiff has plead sufficient facts
to meet elements 1 and 3, as she is a member of a protected
class (female) and suffered adverse employment action, at the
least, in the form of suspensions and termination from her
employment.  Notwithstanding, Plaintiff has not alleged
sufficient facts to plausibly establish that similarly situated
employees outside the protected class, i.e. male employees, were
treated differently.  In the over one hundred pages of
documentation that Plaintiff has submitted, the only references
to discrimination based on her gender are in the Form Complaint
and the EEOC Charges, in which she checked the box for "sex" and
made a conclusory allegation that male employees are not subject
to the disparate treatment.  See ECF No. 4-1 at 1.  In these few
pages, she mentioned one male employee who was chosen to go to a
training conference instead of her, and mentioned this same male
along with a female employee as examples of co-workers who were
permitted to take vacation when it was denied to Plaintiff.  See
Comp. at 2; ECF No. 9-3 at 3.  She does not allege that any male
employees were similarly situated to her in terms of position or
work duties, nor does she allege that male employees were
permitted to engage in similar conduct, such as missing

13

mandatory work events and not being available by phone, without penalty.

The bulk of the documentation submitted by Plaintiff includes blanket allegations that she was harassed, bullied, intimidated, ridiculed, etcetera, but she does not ever allege facts to suggest that she was singled out for this mistreatment because she was a female. As "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," See Iqbal, 556 U.S. at 678, Plaintiff's Title VII claim for disparate treatment will be dismissed.

### b. Hostile Work Environment

To establish a prima facie case for a hostile work environment, Plaintiff must allege facts so that the Court may plausibly infer that (1) 1199 subjected her to unwelcome harassment; (2) that the harassment was based on her gender; (3) that the harassment was sufficiently severe and pervasive so as to alter the conditions of employment and create an abusive working environment; and (4) that there is some basis for imposing liability on 1199. See Bonds v. Leavitt, 629 F.3d 369, 385 (4th Cir. 2011); Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183-184 (4th Cir. 2001). "An employee is harassed or otherwise discriminated against 'because of' his or her sex if, 'but-for' the employee's sex, he or she would not have been the

victim of the discrimination." <u>Wrightson v. Pizza Hut of</u>
<u>America, Inc.</u>, 99 F.3d 138, 142 (4th Cir. 1996).

As discussed <u>supra</u>, Plaintiff has not provided any factual
allegations to support her contention that any harassment she
may have suffered was connected in any way to her gender, which
is required to satisfy element 2.  Moreover, the two alleged
harassers, Ms. Taylor and Ms. Wallace, are both members of the
same protected class, making the nexus between the alleged
harassment and Plaintiff's gender even weaker.  <u>See</u> <u>Bess v. Cty.</u>
<u>Of Cumberland, N.C.</u>, No. 5:11-CV-388-BR, 2011 WL 4809879
(E.D.N.C. Oct. 11, 2011).  Though Plaintiff has certainly
alleged facts that indicate that she did not have the most
comfortable work environment and may have been unfairly treated
by her supervisors, this unfortunate situation is not protected
under Title VII.  As emphatically stated by the Fourth Circuit,
"only harassment that occurs because of the victim's gender is
actionable." <u>Hartsell v. Duplex Products, Inc.</u>, 123 F.3d 766,
772 (4th Cir. 1997).  As this Court cannot plausibly infer that,
but-for Plaintiff being a female, she would not have been the
victim of discrimination, the Court will dismiss Plaintiff's
Title VII claim based on a hostile work environment.

### D. Retaliation

To make a prima facie case for retaliation under Title VII,
Plaintiff must allege sufficient facts to plausibly show that

(1) she engaged in a protected activity; (2) 1199 took an adverse employment action against her; and (3) a causal connection existed between the protected activity and the asserted adverse action.  See Coleman, 626 F.3d at 190; Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 650 (4th Cir. 2002). Both filing a formal charge with the EEOC and complaining to an employer "in an orderly and nondisruptive manner" are protected activities.  Kubicko v. Ogden Logistics Servs., 181 F.3d 544, 551 (4th Cir. 1999).  Additionally, to show that an employer "acted adversely," a plaintiff must only show that the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotation marks and citations omitted).  The plaintiff need not establish that she was a victim of discrimination in order to maintain a successful retaliation claim.  Id.

It is undisputed that Plaintiff engaged in protected activities, both when she filed charges with the EEOC and when she complained directly to 1199 about her discriminatory treatment.  Furthermore, Plaintiff has adequately alleged several employer actions that could be considered adverse under the Burlington Northern standard.  Obviously suspension without

pay[7] would potentially dissuade a reasonable worker from reporting discrimination, as would termination of employment. Some of the other complained of conduct, including refusal to give time-off, could also potentially be considered adverse, depending on the circumstances.

Finally, Plaintiff has alleged sufficient facts so that the Court may plausibly infer that 1199 suspended and eventually terminated her employment <u>because</u> she engaged in protected activities.  See <u>Dowe v. Total Action Against Poverty in Roanoke Valley</u>, 145 F.3d 653, 657 (4th Cir. 1998).  The Court can infer that 1199 knew that Plaintiff had engaged in the protected activity because EEOC sent notice of the September 2010 charge to 1199 on November 15, 2010, <u>see</u> ECF No. 9-2 at 1, and sent notice of the July 2011 charge on August 8, 2011, <u>see</u> ECF No. 9-3 at 1.  Moreover, Plaintiff sent an email directly to George Gresham, on which she copied John Reid and Lisa Wallace, on

---

[7] Although Defendants concede that the August 10, 2011, suspension is an adverse action, they argue that the August 22, 2011, suspension "cannot constitute an adverse action because it was rescinded, and Plaintiff therefore did not suffer <u>any</u> harm as a result of that action," ECF No. 9-1. at 20 (quoting <u>Burlington Northern</u>).  This argument misconstrues <u>Burlington Northern</u>.  The suspension was not rescinded until December 14, 2011, nearly four months later and at which time Plaintiff's employment had already been terminated.  For four months Plaintiff did not know whether her suspension would be rescinded or whether she would receive backpay, so it is reasonable that the suspension could have deterred a reasonable employee from continuing to pursue his or her charge.  <u>See Burlington N.</u>, 548 U.S. at 72-73.

October 1, 2011, in which she complained about the alleged
discrimination and harassment.  ECF No. 1-4 at 30.

Due to the short amount of time that elapsed between 1199
becoming aware of the protected activity and the alleged
retaliatory actions, the Court can infer that there is a causal
connection.  See Williams v. Cerberonics, Inc., 871 F.2d 452,
457 (4th Cir. 1989) (closeness in time between protected
activity and retaliatory conduct sufficient to make a prima
facie case of causality).  EEOC sent notice of the July 2011
charge on August 8, 2011, and two days later, on August 10,
Plaintiff received a one-day suspension.  Two days after that,
on August 12, Ms. Wallace refused to allow Plaintiff to use a
personal day or vacation day to deal with an emergency situation
at home.  Ten days later, on August 22, Plaintiff received
another suspension, this time for three days.  All of these
retaliatory actions occurred shortly after 1199 presumably
became aware of Plaintiff's July 2011 EEOC Charge.

Furthermore, the termination of Plaintiff's employment on
October 17, 2011, occurred approximately two weeks after
Plaintiff sent a complaint email directly to Mr. Gresham, 1199's
President.  Again, the proximity in time between these two
events is sufficient to establish causation at this stage of the
proceedings.  See Price v. Thompson, 380 F.3d 209, 213 (prima
facie causation established where employer takes adverse

18

employment action "shortly after" learning of protected activity).

As the Court is able to infer from a liberal construction of Plaintiff's pro se complaint that she has established a prima facie case of retaliation, the Motion to Dismiss the Title VII claim for retaliation will be denied.

## V.    CONCLUSION

For the foregoing reasons, the Court concludes that Defendants' Motion to Dismiss will be granted in part and denied in part.  All claims against the individual supervisors will be dismissed, and the ADEA claim and claims brought under Title VII for Disparate Treatment and Hostile Work Environment against 1199 will be dismissed, leaving the Title VII Retaliation claim against 1199 as the only pending claim.  The Court will issue a separate Order.

/s/

William M. Nickerson
Senior United States District Judge

July 17, 2012